FILED
IN CLERKS OFFICE
2004 JUN 14 P
U.S. DISTRICT COURT
DISTRICT OF MASS.

Marlon Fred Turner Jr.
Reg# 16838-074
U.S. Medical Center
for Federal Prisoners
PoBox: 4000
Springfield, MO, 65801

Attn: Pro Se Legal Clerk
Clerk of Courts
U.S District Court
District of Massachusetts
Donohue Federal Building
595 Main Street
Worcester, Massachusetts, 01608

June, 5, 2004

RE: Turner v. Winn et al
4:04-cv-40074-NMG

Dear Clerk of Courts,

I am writing concerning my civil suit that was filed in your court on 5-13-04.

I would like to submit into evidence the attached Bureau of Prisons memorandums (Exhibits A, B, and C) and the Bureau

of Prisons Program Statement (Exhibit D).

I respectfully request from this court a update on the status of my suit. Since I filed my suit I have not even recieved anything from the courts acknowledging that my suit was recieved and docketed. I had to have my family get the docket # off of the computer.

Also I respectfully request that this court appoint me an attorney to represent me in this civil case because I am not very knowledgable of the law and am not financially able to hire an attorney.

I would be greatly appreciative if you would write back and let me know the status of my suit.

Thank You

Respectfully

[signature]

State of Missouri
County of Greene

Subscribed before me this 7th day of June 2004.

Mary Bradley

MARY BRADLEY
NOTARY PUBLIC STATE OF MISSOURI
LAWRENCE COUNTY
MY COMMISSION EXP. JULY 4,2006



U.S. Departm of Justice

Federal Bureau of Prisons

*Federal Medical Center, Devens*

*P.O. Box 880*
*Ayer, MA 01432*

Date 01/23/02

MEMORANDUM FOR Operations Leiutenant Fernandez

FROM: J. Hickey, Clinical Nurse

SUBJECT: Turner, Marlin #16838-074

At approximately 1730 a force cell move was performed on inmate Turner. Inmate Turner was combative during this movement and was placed in soft restraints. During the struggle with this inmate in his cell it was noted by me that Laundry Supervisor Martin lay on the floor, underneath the inmate and appeared unconscious. When the inmate was moved from the cell an initial assessment of Supervisor Martin showed that he was conscious at that time and had hurt his back. He was able to feel and move his lower body but was in a lot of pain in his lower back area. Supervisor Martin also related that the inmate had bit him and had him in a headlock and he felt his circulation being cut off. Inmate Turner was given IM medication by me, per MD Riggs, at this time because of severe agitation Inmate Turner had good color, sensation and movement of wrists and ankles after restraints were placed but promptly broke them off after the team exited his cell.

*Sensitive Limited Official Use Only*

"Exhibit A"

U.S. Department of Justice

Federal Bureau of Prisons

Federal Medical Center Devens

P.O. Box 880
Ayer, MA 01432

January 24, 2002

MEMORANDUM FOR M.A. Bollinger, Captain

FROM: Hector R. Fernandez, Administrative Lieutenant

SUBJECT: Calculated Use of Force
RE: Turner, Marlin, Reg. No. 16838-074

On Wednesday, January 23, 2002, at approximately 4:20 P.M., the N-1 Unit Officer notified me, Officer Clayton, that inmate Turner was covering his cell door window and claiming that he was hurting himself. I instructed Officer Clayton to open the food slot and to observe inmate Turner until my arrival.

Upon my arrival to N-A, at approximately 4:30 P.M., Officer Clayton notified me that inmate Turner was not hurting himself and that he was sitting by the shower area. While I was in the unit, inmate Turner assaulted Officer Clayton by throwing a cup of urine at the officer through the food slot as Officer Clayton was attempting to observe inmate Turner's activities in the cell.

At approximately 4:45 P.M., I spoke to Dr. Riggs and we went on to cell 110 to speak to inmate Turner. Inmate Turner was clearly agitated and did not want to comply with Dr. Riggs instructions after Dr. Riggs told him that he was going to be place on observation for his own safety due to his earlier intentions of hurting himself. I also attempted to get inmate Turner to comply with orders to submit to restraints, but he refused stating that he did not say those things and he did not need to be on "suicide watch."

Inmate Turner stated that the only way he was going to move was by force. He stated "bring the team," "I am not moving on my own." Inmate Turner, again, covered his cell door window and did not allowed staff to talk to him or to watch him. Then, I contacted Captain Bollinger to obtain authorization to move inmate Turner form cell 110 to cell 109 and to place him on Ambulatory Soft restraints. Once Captain Bollinger gave the authorization (approximately 5:10 P.M.), I assembled a Use of Force Team and continued to cell 110 to conduct the move. Dr. Thompson attempted confrontation avoidance procedures with inmate Turner with negative results. I then gave inmate Turner one last order to submit to restraints, which he refused. At that time I ordered the Use of

Exhibit B

Force team to enter cell 110 and to gain control of inmate Turner. Because of the window been covered and information from Lieutenant Lyon, in which he mentions that he had observed inmate Turner wrapping his right hand, a shield was used by the Officer Krauss (#1 Team Member) to enter the cell and to give team members additional protection during the move.

The following is a chronological approximate time line of the events during the Use of Force activity.

6:02PM- Inmate Turner refused to submit to restraints.
6:03PM- Team entered the cell.
6:04PM- Team is struggling with inmate Turner. He is being combative. I helped with the applications of restraints and used a 911 rescue knife to cut braided material that was placed by the inmate between the bed and the desk as booby traps. I notice Officer R. Martin, Laundry Foreman, unconscious.
6:05PM- Inmate Turner was removed from cell 110 and moved to cell 109. (While they moved inmate Turner, Nurse J. Hickey and Nurse Provost were administering first aid to Mr. Martin.)
6:21PM- Inmate Turner was administered medication after being placed on Ambulatory Soft restraints.
6:23PM- Team exited the cell. Inmate Turner was observed destroying the soft ambulatory restraints by using the metal in the shower area and sink.

The move was completed at 6:27PM. Mr. Martin was transported to the local hospital via an ambulance. Mr. Martin was later released from the hospital.

U.S. Department of Justice

Federal Bureau of Prisons

Federal Medical Center, Devens

P.O. Box 880
Ayer, MA 01432

January 23, 2002

MEMORANDUM FOR H. FERNANDEZ- OPERATIONS LIEUTENANT

FROM: D. Sullivan- J Unit Case Manager

SUBJECT: I/M TURNER, Marlin Reg. No. 16838-074

On the above said date, I was assigned to participate in a Calculated Use of Force Cell Move in N-1 against Inmate Marlin Turner. During this procedure, my role was as the Number 4 Officer- Lower Left Appendages.

At approximately 6:05PM, after all confrontational avoidance techniques failed, we were ordered into cell #110. As I entered the cell, I had to maneuver around a mattresses that had been placed immediately in front of the cell door and I noticed feathers had been spread all over the floor. I also observed the inmate swing at the Number 1 Officer, SO T. Krauss, then begin backing up towards the wall.

As I approached the inmate to assist in subduing him, I tripped over a makeshift rope that had been tied across the floor, one end to the bunk and the other to his desk. This caused me to fall to the floor, however, I did not sustain any apparent injury. As I recovered, I saw the inmate fall off the bunk and the Number 1 and Number 2 officer fall on top of him. Utilizing the amount of force necessary to try and contain the situation, I attempted restrain inmate Turner's right leg by grabbing his ankle and pushing his leg down towards the floor. Inmate Turner was fighting very hard and we were not able to maintain control over the inmate initially. The inmate kept kicking me in the right thigh and fighting our efforts to restrain him. After a short time, the inmate tired and we were able to place the leg restraints on him. I secured the right leg and at the time, I believed Officer Number 5- R. Martin secured the left leg. I then assisted in trying to secure the inmates hands as we were able to exact control over both the inmates legs. The inmate continued to struggle and fight us. After a short time, we did manage to get control over the inmate and secure the handcuffs.

Once secure, we extracted the inmate from his cell, I supported the inmate by his right leg and by his waist. As we were leaving the cell, I observed one of the team members, later identified as Officer Number 5-R. Martin, lying on the floor motionless. We brought the inmate into cell #109 were we placed him on the bunk. Lt. Fernandez assisted us in exchanging the hard restraints for the soft restraints and placing the inmate in a suicide jumper. The inmate offered no resistance and stated, "I ain't got nothing against you guys so I ain't gonna fight you." "I got the guy I

"Exhibit C"

wanted," "Clayton," "He was crying like a baby." Once this process was completed, and per order of Lt. Fernandez, we rolled the inmate over on his side where Nurse J. Hickey administered some medication to sedate the inmate. Inmate Turner initially tried to resist the injection, but did not continue his fight.

Once the shot was administered, the restraints were checked by the nurse and we exited the cell with no further confrontation.

At approximately 7:05PM, we were advised that inmate Turner had gotten out of the soft restraints and was now pounding on the door. We were told to prepare to go back into cell #109 and this time we would be applying hard restraints to inmate Turner. I was once again assigned as the Number 4 Officer- assigned to the lower left extremities.

As we prepared to enter the cell, Lt. Fernandez asked inmate Turner to turn around and cuff up. Inmate Turner complied with no apparent resistance. He was then ordered to sit on the bunk, he again complied with the Lieutenants order.

Once inmate Turner was seated on the bunk, we entered the cell and maintained control over the inmate as the hard restraints, including black box, were applied to the inmate. Inmate Turner offered no resistance and minimal force was utilized to maintain control over inmate Turner. While the hard restraints were being applied, Captain M. Bollinger advised the Lieutenant that part of the soft restraints were missing.

We continued to place the inmate in hard restraints and, once complete, we visually searched the inmate for the missing piece of the soft restraint. The inmate stated, "You guys ain't gonna find it." Lt. Fernandez asked him for the piece and inmate Turner stated, "I'll tell the Warden where it is when he comes back to see me."

The hard restraints were checked by Nurse J. Hickey and determined to be appropriately applied. The team was then ordered out of the cell.





U.S. Department of Justice
Federal Bureau of Prisons

# Program Statement

OPI: HSD
NUMBER: 6010.01
DATE: September 21, 1995
SUBJECT: Psychiatric Treatment and Medication, Administrative Safeguards for

EFFECTIVE DATE: September 25, 1995

1. PURPOSE AND SCOPE. To provide administrative safeguards for psychiatric treatment and medication, for both voluntary and involuntary admissions to mental health facilities.

2. PROGRAM OBJECTIVES. The expected results of this program are:

a. Psychotropic medications will be administered only when there is a diagnosable psychiatric disorder or symptomatic behavior for which such medication is accepted treatment.

b. Every inmate who voluntarily admits himself or herself for psychiatric treatment or voluntarily takes psychotropic medication will be properly informed of his or her rights, and his or her competence to give consent will be properly documented.

c. Except for psychiatric emergencies, proper due process procedures will be provided to every involuntarily hospitalized inmate before psychiatric treatment, including psychotropic medication, is administered.

d. During a psychiatric emergency, appropriate psychotropic medication will be administered only when less restrictive alternatives are not available or indicated, or would not be effective. When clinically possible, long-acting psychotropic medications will be avoided.

e. For any person not covered by sections 4241 through 4247 of Title 18 U.S.C., any decision to admit that person for psychiatric treatment will be made at an administrative hearing that meets the requirements of Vitek v. Jones.

[Bracketed Bold - Rules]
Regular Type - Implementing Information



"Exhibit D"



3. DI[redacted]TIVES AFFECTED

a. [redacted]

b. Directives Referenced.

| | |
|---|---|
| P.S. 5212.06 | Control Unit Program (08/29/95) |
| P.S. 5310.12 | Psychology Services Manual (08/13/93) |
| P.S. 5310.13 | Mentally Ill Inmates, Institution Management of (03/31/95) |
| P.S. 6000.04 | Health Services Manual (12/15/94) |

c. Rules cited in this Program Statement are contained in 28 CFR 549.40-43.

4. STANDARDS REFERENCED

a. American Correctional Association Foundation/Core Standards for Adult Correctional Institutions: C2-4158, C2-4164, 2-4322-1.

b. American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4342, 3-4372, 3-4342-1.

c. American Correctional Association Foundation/Core Standards for Adult Local Detention Facilities: FC2-5085.

d. American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-4E-18, 3-ALDF-4E-43(M), 3-ALDF-4E-18-1.

e. American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies: 2-CO-4E-01.

→ 5. [USE OF PSYCHOTROPIC MEDICATIONS §549.40. Psychotropic medication is to be used only for a diagnosable psychiatric disorder or symptomatic behavior for which such medication is accepted treatment.]

Psychotropic medication is generally not designed for, nor shall it be used as, a method of chemical control for behaviors unrelated to mental illness. Psychotropic medication may be administered on a voluntary basis for a medical purpose other than treatment of a psychiatric disorder, i.e., Hansen's disease, for which appropriate medical treatment includes drugs classified as psychotropic. Psychotropic medication is medication prescribed by a physician specifically for mood-altering, mind-altering, or impulse control purposes. This does not include sleeping medication or minor tranquilizers.

6. [VOLUNTA[redacted]MISSION AND PSYCHOTROPIC MEDICATION §549.41

a. A sentenced inmate ma[redacted]untarily admitted for psychiatric treatment and medica[redacted]n when, in the professional judgment of qualified health personnel, such inmate would benefit

from such treatment and demonstrates the ability to give informed consent to such admission. The assessment of the inmate's ability to give informed consent will be documented in the individual's medical record by qualified health personnel.]

See Section 8.c., Exceptions, for procedures for military prisoners, unsentenced Immigration and Naturalization Service (INS) detainees, unsentenced prisoners in Bureau custody as a result of a court order, state of territorial prisoners, and District of Columbia offenders.

To make this assessment, staff must determine whether the person understands the reasons for admission, the recommended treatment, his or her right to object to treatment at any time, and the means by which he or she may object. This documentation shall be in addition to the Consent of Admission Form, and will be made on BP-358 (60), Medical Treatment Refusal.

[b. If an inmate is to receive psychotropic medications voluntarily, his or her informed consent must be obtained, and his or her ability to give such consent must be documented in the medical record by qualified health personnel.]

The medical record must include documentation that, prior to giving written consent, the inmate understood why the medication was deemed necessary, how the medication could improve his or her condition, possible side effects, the consequences of not take the medication, and any alternative forms of treatment and their risks.

7. [INVOLUNTARY ADMISSION §549.42. A court determination is necessary for involuntary hospitalization for psychiatric treatment. A sentenced inmate, not currently committed for psychiatric treatment, who is not able or willing to voluntarily consent either to psychiatric admission or to medication, is subject to judicial involuntary commitment procedures. Even after an inmate is involuntarily committed, staff shall follow the administrative due process procedures specified in §549.43 of this subpart.]

§549.43 of this subpart refers to Section 8 of this Program Statement.

→ 8. [<u>INVOLUNTARY PSYCHIATRIC TREATMENT AND MEDICATION</u> §549.43. Title 18 U.S.C. sections 4241-4247 and Federal court decisions require that certain procedures be followed prior to the involuntary administration of psychiatric treatment and medication to persons in the custody of the Attorney General. Court commitment for hospitalization provides the judicial due process hearing, and no further judicial authorization is needed for the admission decision. However, in order to administer treatment or psychotropic medication on an involuntary basis, further administrative due process procedures, as specified in this section, must be provided to the inmate. Except as provided

for in paragraph (b) of this section, the procedures outlined herein must be followed after a person is committed for hospitalization and prior to administering involuntary treatment, including medication.]

Title 18 U.S.C. section 4241(d) provides for hospitalization and treatment of individuals found to be suffering from a mental disease or defect which renders them mentally incompetent to stand trial. At an administrative hearing which must be conducted by a psychiatrist in accordance with established hearing procedures (see Section 8.a.), a determination must be made that psychotropic medication is necessary to attempt to make this individual competent for trial or because the individual is dangerous to self or others, is gravely disabled, or is unable to function in the open population of a Bureau Psychiatric Referral Center. An inmate committed for evaluation under §4241(b) or §4242(a) should not be involuntarily treated in a non-emergency situation in the absence of a court order or without documented approval of the committing judge.

Title 18 U.S.C. sections 4243 and 4246 provide for the hospitalization and treatment of a person found not guilty only by reason of insanity and of a person due for release but suffering from a mental disease or defect. Section 4246 cases refer to those inmates who are retained after release or are due for release and are suffering from a mental disease or defect and their release would cause substantial risk of bodily injury to another person or serious damage to the property of another.

Title 18 U.S.C. sections 4244 and 4245 provide for the hospitalization and treatment of convicted and imprisoned persons suffering from a mental disease or defect. Hospitalization follows a court determination that the person may be suffering from a mental disease or defect for the treatment of which he/she needs custody in a suitable facility. After commitment, psychotropic medication may be involuntarily administered if the individual does not give informed consent, and if a determination is made at the hearing (specified in section 8), that the individual needs medication to treat the mental illness and the individual is dangerous to self or others, or is gravely disabled. With respect to a 18 U.S.C. § 4244(d) commitment, staff may also involuntarily medicate an individual who is unable to adequately function in the general population of a medical referral center, or to enable him to be returned to court for final sentencing. If and when a 4244(d) inmate is returned to court for final sentencing while being treated involuntarily, the court must be apprised of the limited nature of the inmate's recovery evidenced by the course of treatment. With respect to an 18 U.S.C. 4245 commitment, staff may involuntarily medicate an individual unable to function in the open population of a medical referral center, subject to due process requirements of subsection a. below.

[a. Procedures. When an inmate will not or cannot provide voluntary written informed consent for psychotropic medication, the inmate will be scheduled for an administrative hearing. Absent an emergency situation, the inmate will not be medicated prior to the hearing. In regard to the hearing, the inmate will be given the following procedural safeguards:

(1) Staff shall provide 24-hour advance written notice of the date, time, place, and purpose of the hearing, including the reasons for the medication proposal.]

The notice must advise the inmate that, as a result of the specific diagnosis and the court commitment, psychotropic medication has been proposed.

[(2) Staff shall inform the inmate of the right to appear at the hearing, to present evidence, to have a staff representative, to request witnesses, and to request that witnesses be questioned by the staff representative or by the person conducting the hearing. If the inmate does not request a staff representative, or requests a staff representative with insufficient experience or education, the institution mental health division administrator shall appoint a staff representative. Witnesses should be called if they have information relevant to the inmate's mental condition and/or need for medication, and if they are reasonably available. Witnesses who only have repetitive information need not be called.]

The staff representative should be impartial and able to act in the best interests of the inmate. He/she shall meet with the inmate to help prepare for the hearing and must assist at the hearing in presenting the inmate's position. The staff representative shall also help the inmate prepare and submit an appeal if he/she requests assistance or wishes to appeal but is unable to prepare and submit the appeal.

[(3) The hearing is to be conducted by a psychiatrist who is not currently involved in the diagnosis or treatment of the inmate.

(4) The treating/evaluating psychiatrist/clinician must be present at the hearing and must present clinical data and background information relative to the need for medication. Members of the treating/evaluating team may also attend the hearing.

(5) The psychiatrist conducting the hearing shall determine whether treatment or psychotropic medication is necessary in order to attempt to make the inmate competent for trial or is necessary because the inmate is dangerous to self or others, is gravely disabled, or is unable to function in the open population of a mental health referral center or a regular prison. The psychiatrist shall prepare a written report regarding the decision.] When medication has been administered to make an



inmate competent for trial, staff shall include such information in the report to the court. (see Chapter 7, Section 5 of the Health Services Manual)

[(6) The inmate shall be given a copy of the report and shall be advised that he or she may submit an appeal to the institution mental health division administrator regarding the decision within 24 hours of the decision and that the administrator shall review the decision within 24 hours of the inmate's appeal. The administrator shall ensure that the inmate received all necessary procedural protections and that the justification for involuntary treatment or medication is appropriate. Upon request of the inmate, the staff representative shall assist the inmate in preparing and submitting the appeal.

(7) If the inmate appeals, absent a psychiatric emergency, medication will not be administered before the administrator's decision. The inmate's appeal, which may be handwritten, must be filed within 24 hours of the inmate's receipt of the decision.

(8) A psychiatrist, other than the attending psychiatrist, shall provide follow-up monitoring of the patient's treatment medication at least once every 30 days after the hearing. The follow-up shall be documented in the medical record.]

Forms for use by the individual conducting the hearing and for providing notice to the inmate are "Notice of Medication Hearing and Advisement of Rights," "Involuntary Medication Report," and "Appeal of Involuntary Medication Decision."

[b. Emergencies. For purpose of this subpart, a psychiatric emergency is defined as one in which a person is suffering from a mental illness which creates an immediate threat of bodily harm to self or others, serious destruction of property, or extreme deterioration of functioning secondary to psychiatric illness. During a psychiatric emergency, psychotropic medication may be administered when the medication constitutes an appropriate treatment for the mental illness and less restrictive alternatives (e.g., seclusion or physical restraint) are not available or indicated, or would not be effective.

c. Exceptions. Title 18 United States Code, sections 4241 through 4247 do not apply to military prisoners, unsentenced Immigration and Naturalization Service (INS) detainees, unsentenced prisoners in Bureau custody as a result of a court order (e.g., a civil contemnor), state or territorial prisoners, and District of Columbia Code offenders. For those persons not covered by sections 4241-4247, the decision to involuntarily admit the person to the hospital must be made at an administrative hearing meeting the requirements of Vitek v. Jones. The decision to provide involuntary treatment, including medication, shall nonetheless be made at an administrative hearing in compliance with §549.43.]





§549.43 refers to Section 8 of this Program Statement.

Note: The military must provide the Vitek hearing for military prisoners. For procedures regarding State, Territorial, and D.C. Code offenders, see Chapter 7, Section 17 of the Health Services Manual.

\s\
Kathleen M. Hawk
Director

